IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : |
| Plaintiff, | : CASE NO. 05-348 JJF |
| v. | : |
| CITIBANK DELAWARE | : |
| Defendant. | : |

**BRIEF IN SUPPORT OF
DEFENDANT CITIBANK DELAWARE'S RESPONSE
TO PLAINTIFF EEOC'S MOTION TO COMPEL
DEFENDANT CITIBANK DELAWARE'S DISCOVERY RESPONSES**

OF COUNSEL:

David H. Williams (#616)
Morris James Hitchens and Williams, LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900
dwilliams@morrisjames.com

Judith E. Harris
Sarah E. Pontoski
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5028/5059
jeharris@morganlewis.com
spontoski@morganlewis.com

Dated: August 3, 2006

Attorneys for Defendant
Citibank Delaware

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii
I.    INTRODUCTION ........................................................................................................... 1
II.   BRIEF FACTUAL AND PROCEDURAL BACKGROUND ......................................... 3
III.  ARGUMENT ................................................................................................................... 8
      A.   The Information That The EEOC Has Requested Regarding Leaves of
           Absences of Other Citibank Employees Is Not Relevant To This Litigation ........ 8
      B.   Even If Information Regarding The Duration Of Leaves Of Other
           Employees Were Relevant, The Burden And Expense Of The Proposed
           Discovery Outweighs The Benefit, And The EEOC's Motion Should Be
           Denied. .................................................................................................................. 11
      C.   Certain Information And Documents Requested By The EEOC Are Not
           Within Citibank's Possession Custody Or Control. ............................................. 12
IV.   CONCLUSION .............................................................................................................. 14

# TABLE OF AUTHORITIES

## CASES

Bates v. Tandy Corp., 03-5519, 2005 WL 1162502 (E.D. Pa. May 17, 2005).................11

Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775
    (6th Cir. 1998)..................................................................................................10

Hickman v. Taylor, 329 U.S. 495 (1947) ............................................................................8

Hill v. Motel 6, 205 F.R.D. 490 (S.D. Oh. 2001) ...............................................................9

Jones v. U.P.S., 214 F.3d 402 (3d Cir. 2000) ............................................................10, 11

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978)................................................8

Public Loan Co. v. FDIC, 803 F.2d 82 (3d Cir. 1986) ......................................................8

Rascon v. U.S. West Communications, Inc., 143 F.3d 1324 (10th Cir. 1998).................10

Shannon v. City of Philadelphia, 98-5277, 1999 WL 1065210
    (E.D. Pa. Nov. 23, 1999)..................................................................................10

U.S. v. Federation of Physicians and Dentists, Inc., 63 F. Supp. 2d 475
    (D. Del. 1999) ..................................................................................................13

Volvo Trucks N.A., Inc. v. Crescent Ford Truck Sales, Inc., No. 02-3398,
    2005 WL 1400461 (E.D. La. June 1, 2005)......................................................9

## CODE AND RULES

29 U.S.C. 2612(a)(1).........................................................................................................3

Fed. R. Civ. P. 26(b) .........................................................................................................8

Fed. R. Civ. P. 26(b)(2)(i).................................................................................................8

Fed. R. Civ. P. 26(b)(2)(iii)...............................................................................................8

Fed. R. Civ. P. 33............................................................................................................12

Fed. R. Civ. P. 34............................................................................................................12

I.  **INTRODUCTION**

The Equal Employment Opportunity Commission ("EEOC") has brought this Motion to Compel in search of a claim; a claim which the undisputed record establishes is non-existent. The information sought in the motion will not change this fact.

In its Complaint, the EEOC alleges that Citibank Delaware ("Citibank") discharged Terry Jenkins ("Ms. Jenkins"), from her employment "because of her disability" in violation of the Americans With Disabilities Act ("ADA"). The EEOC contends that Citibank should have offered Ms. Jenkins an extended leave as a reasonable accommodation. However, discovery has closed and, as demonstrated below, the EEOC has not adduced any evidence that even suggests that Citibank had any knowledge of Ms. Jenkins' medical condition at the time that Ms. Jenkins was terminated. Nor is there any evidence that Ms. Jenkins ever asked Citibank for a reasonable accommodation. Despite its obvious futility, this motion demands the production and disclosure of confidential and highly sensitive information about non-party individuals – all Citibank employees who ever sought leave under the Family Medical Leave Act ("FMLA") from July 1996 to the present. Specifically, the EEOC seeks the following information from Citibank: the basis for the medical leave, the medical conditions of those who sought and received medical leave and the duration of the medical leave. The EEOC seeks this information for the years 1996 through 2002. The information is completely unrelated to, and will not save, the EEOC's meritless claim.

As an initial matter, Citibank only has records regarding the duration of an employee's leave. It does not have information documenting the basis for the leave. In addition, Citibank does not have information regarding the medical conditions of individuals who sought and received medical leave. Such information is collected and retained by the Third Party

1

Administrators of Citibank's Family and Medical Leave Policy and Short Term Disability ("STD") Plan – MetLife (hereinafter "TPA") and CNA. Pursuant to the Administrative Services Agreement between Citibank and its TPA, the TPA cannot provide confidential information regarding plan Participants to Citibank or anyone else other than an individual Participant requesting it, without the written approval of the individual Participant. In order to disclose such information, the TPA must secure written authorization from each Participant at issue.

The information that Citibank does retain – information regarding the duration of employees' leaves – is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The EEOC seeks information regarding the duration of other Citibank employees' leaves to demonstrate Citibank's procedures and policies with respect to providing employees with leave as a reasonable accommodation under the ADA. However, information regarding the duration of leaves will not establish the basis for the leave or whether an individual requested or was granted leave as a reasonable accommodation for a disability. Thus, such information will not shed any light on the EEOC's claim that Citibank should have engaged in an interactive process with Ms. Jenkins and granted her additional leave. Consequently, such information is irrelevant to the EEOC's claim, and is not reasonably calculated to lead to the discovery of admissible evidence.

Moreover, the collection and production of this useless information will require Citibank to expend significant amounts of time and money. Citibank would have to conduct a lengthy review of records to determine which individuals it employed from 1996 to the present, and of those, who took leave. It would then need to review thousands of individual employee files to collect information regarding the duration of its employee's leaves of absence. At the end of that process, the duration of an employee's leave will have no bearing on the EEOC's claims, since

information about the basis for the leave, and the medical condition of the individual, is in the custody and control of the TPA. Thus, the burden and expense of the production of the information sought clearly outweighs its benefit, and the Court should deny the EEOC's motion.

## II.    BRIEF FACTUAL AND PROCEDURAL BACKGROUND

The EEOC has brought a disparate treatment claim under the ADA on behalf of one individual – Ms. Jenkins. The following facts are undisputed. Ms. Jenkins commenced working in Citibank Global Loans Department in January of 2001. (Dep. of T. Jenkins, excerpts and a selected exhibit of which are attached hereto as Exhibit A, at 44.) On November 30, 2001, Ms. Jenkins began a paid leave of absence. (HR Weblink printout for Terry Jenkins, attached hereto as Exhibit B.) She returned to work on January 22, 2001. (Id.) On January 24, 2002, two days after her return, Ms. Jenkins began a second paid leave of absence, from which she never returned to work. (Id.)[1] Citibank was aware of the fact that Ms. Jenkins had sought and received STD benefits. On April 26, 2002, Citibank received notice from MetLife that it had denied Ms. Jenkins' appeal for extended STD benefits. (See Dep. of S. Zobel, excerpts and selected exhibits of which are attached hereto as Exhibit C, at 78 & 82; MetLife Telephone Log, excerpts of which are attached hereto as Exhibit D, at ML0060.) Consequently, Citibank sent a letter to Ms. Jenkins on May 7, 2002 requesting that Ms. Jenkins return to work. (Ex. C at 77, 83-85; May 7, 2002 Letter, attached as Exhibit 9 to Ex. C.) Citibank received confirmation that its May 7, 2002 letter was delivered to Ms. Jenkins on May 9, 2002. (See E-mail from Wimbush to Zobel of May 10, 2002, attached hereto as Exhibit E.)

---

[1]    The FMLA requires that employers grant certain employees 12 weeks of unpaid leave. See 29 U.S.C. 2612(a)(1). Citibank's policy provides that employees receive an additional week of leave, beyond what is required by the FMLA, for a total of 13 weeks. (Citigroup Employee Handbook at CB00404-405, attached as Exhibit 1 to Ex. C.) In fact, Ms. Jenkins received more than 22 weeks of leave. (Ex. B.)

Unbeknownst to Citibank, Ms. Jenkins entered the hospital on May 7 or 8, 2002 due to a Sickle Cell crisis which occurred that same day.[2] (Ex. A at 109-10; Ex. C at 85-86.) Ms. Jenkins never responded to Citibank's May 7, 2002 request that she return to work, and thus, on May 15, 2002, Citibank sent Ms. Jenkins a letter terminating her employment. (Ex. C at 96-98; May 15, 2002 Letter, attached as Exhibit 10 to Ex. C.) Citibank received confirmation that Ms. Jenkins received its May 15, 2002 letter. (See E-mail from Wimbush to Zobel of May 16, 2002, attached hereto as Exhibit F.) Ms. Jenkins never contacted Citibank to inform Citibank that she was unable to return to work, that she was hospitalized, to assert that she was disabled under the ADA, or to request any additional leave. (Ex. A at 130-133.) No one ever contacted Citibank on behalf of Ms. Jenkins to inform Citibank that Ms. Jenkins could not return to work, that she was hospitalized, to assert that she was disabled under the ADA, or to request any additional leave. (Ex. C at 86-87 & 94; Dep. of J.G. Scudder, excerpts of which are attached hereto as Ex. G, at 38-46). In fact, Citibank did not learn until a year later, in May of 2003, when it received the charge of discrimination Ms. Jenkins' had filed with the EEOC, that Ms. Jenkins had been in the hospital and had been unable to return to work. (Ex. C at 85-86; Notice of Charge, attached as Exhibit 2 to Ex. A.)

Moreover, Citibank had no knowledge of Ms. Jenkins's medical condition at the time of her termination. MetLife is not permitted to and does not provide Citibank with medical information regarding Citibank employees. (Ex. C at 19-25, 71 & 82; Ex. D at ML0061;

---

[2] This Sickle Cell crisis was not the basis of her claim for STD benefits or for extended STD benefits. Ms. Jenkins' claim for benefits and her appeal of the denial of that claim predate this crisis. (See Denial/Appeal Notification dated April 26, 2002, attached as Exhibit 14 to Ex. C; Ex. A at 106-07 (testifying that she was hospitalized from April 29 to May 1 or 2, 2006 for a polyp removal procedure); Ex. A at 109-10 (testifying that she was hospitalized for her Sickle Cell crisis on May 7 or 8, 2002).)

4

MetLife Administrative Services Agreement, attached hereto as Exhibit H, at CB00145.)[3] (Ex. C at 25, 32-36, 63-64, 71,78, 82 & 96; Ex. D at ML0061.)[4] Specifically, MetLife did not provide Citibank with either the March 26, 2002 doctor's note, or any of the information contained in the doctor's note. (See Ex. C at 19-20; 32-36 & 99-101.) At no time did Citibank know that Ms. Jenkins' doctor had provided MetLife with a note that stated that Ms. Jenkins could not return to work until June 6, 2002. (Ex. C at 99-101.) In fact, the only information that Citibank received from MetLife was information regarding the grant and denial of Ms. Jenkins' leave and STD benefits. (See Ex. C at 78 & 82; Ex. D at ML0061.)

On November 28, 2005, the EEOC served Citibank with interrogatories and requests for production ("Written Discovery Requests"), which sought of the production of the following information regarding leaves of absences of other Citibank employees:

Interrogatory No. 4
Identify, using the definition found in Section 1 (c)[5] of the Introduction to these Interrogatories, and state the total number of employees of Defendant who requested and were granted medical leave (including Employee Medical Leave, Family Medical Leave, disability leave (long or short-term) or any other medical leave) during the period of Ms. Terry Jenkins' employment, from July 1996 through May 2002.

Interrogatory No. 5
For the individuals and periods of leave identified in your response to Interrogatory No. 4, state the duration of each period of leave. If an individual received more than one periods [sic] of leave, state the duration of each period of leave granted to that employee.

Interrogatory No. 6

---

[3] MetLife's employees, Thomas Tawyer and Paula Bianchi also testified regarding this issue. However, the transcripts from their deposition are not yet available. Citibank will provide the relevant pages from the transcript when they become available.

[4] MetLife employees Thomas Tawyer and Paula Bianchi testified that they did not provide Citibank with medical information regarding its employees.

[5] Section 1(c) of the EEOC's Interrogatories provides that "'Identify' shall in each instance mean as to a person or persons to state his or her full name, present or last known business or residence address and telephone number, the title of the position or positions held with the Defendant, and his or her employment dates." (Written Discovery Requests, attached hereto as Exhibit I.)

Identify, using the definition found in Section 1 (c) of the Introduction to these Interrogatories, and state the number of employees who applied for and were granted disability benefits during the period of Ms. Terry Jenkins employment, from July 1996 through May 2002.

Interrogatory No. 7
For each employee identified in your response to Interrogatory No. 6, state the period of time that each person received disability benefits. If that individual received one or more extensions of benefits, indicate the length of time of each extension.

Request for Production No. 9
For the following individuals, provide all documents related to their leaves of absence, medical, or otherwise: (names of individuals identified in this interrogatory are subject to confidentiality agreement between the parties and are not provided in this response to the Motion to Compel).

Request for Production No. 19
Produce documents that discuss or memorialize Employee Medical Leaves or Family Medical Leaves taken by employees of Defendant (including but not limited to the Citibank Financial Investigation Unit and Citibank Global Markets, Global Loans Unit) from January 1996 to the present time.

Request for Production No. 20
Produce all documents that discuss or memorialize short or long term disability leave taken by employees of Defendant other than Ms. Jenkins from 2001 to the present.

(Exhibit I.) On January 18, 2006, Citibank made timely objections to the EEOC's discovery requests related to information or documents regarding leaves of absences of other Citibank employees on the basis that the such information was neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, the requests were overbroad and unduly burdensome, and most of the information requested by the EEOC was not within Citibank's possession custody or control because the TPA of Citibank's medical leave and short term disability plan possessed and controlled such information. (Citibank's Discovery Responses dated January 18, 2006, attached hereto as Exhibit J.) In its objections, Citibank identified CNA as its Third Party Administrator in 2001 and MetLife as its Third Party Administrator in 2002. (Id.) Despite this disclosure, the EEOC never sought production from MetLife or CNA of any documents or information regarding leaves of absence taken by other Citibank employees. (See

6

Subpoenas addressed to MetLife Employees T. Tawyer and P. Bianchi, dated June 28, 2006, attached hereto as Exhibit K.) Although the EEOC issued a subpoena to MetLife, the subpoena made no request for the information it now seeks from Citibank in this motion. (See Id.)[6]

In addition to not having this information, Citibank cannot obtain this information from the TPA. (See, e.g. Ex. H at CB00145.)[7] Pursuant to the Administrative Services Agreement between Citigroup, Inc. and MetLife, MetLife is not permitted to disclose "Individually Identifiable Participant[8] Information," without a written authorization from a Participant of the plan. (See, e.g. Ex. H at CB00145.) Such information includes, *inter alia,* names, addresses, social security numbers, dates of birth, and other personal information related to the Participants. (See, e.g. Ex. H at CB00145.) Citibank produced a copy of the Administrative Services Agreement with MetLife, the TPA when Ms. Jenkins took the leave in question, to the EEOC on January 18, 2006.

Citigroup, Inc. ("Citigroup") maintains information regarding the duration of the leaves of absences taken by its Citibank employees in its HR Weblink System and the North America PeopleSoft System. (Ex. B; August 3, 2006 Decl. of Marleen Soohoo, attached hereto as Ex. L, at ¶ 2.) Citibank would have to conduct a review of numerous records to determine which individuals were employed by Citibank during this time period, and then it would have to search through the files of those individuals to obtain information regarding leaves of absence. (Ex. L at ¶¶ 6-7.) Additionally, some archived information regarding individuals employed by Citibank

---

[6] The EEOC never served any third party discovery upon CNA, the entity that administered Citibank's leave plan and STD plan prior to January of 2002.

[7] Citibank is unable to locate an Administrative Services Agreement between Citibank and CNA. Citibank disclosed the relationship between CNA and Citibank over six months prior to the close of discovery in January of 2006, and the EEOC failed to subpoena CNA for the production of such an agreement.

[8] The Administrative Services Agreement with MetLife defines "Participant" as "a current or former employee of Citigroup Inc., who is eligible and enrolled for coverage under and subject to the Program's terms." (Ex. H at CB00134.)

prior to 2005 may exist only in hardcopy. (Ex. L at ¶ 3.)[9] It does not maintain this information in a compiled form. (Id. at ¶ 5.) Citibank anticipates that just one step of that process, the review of the HR Weblink and PeopleSoft Systems to identify current and former employees of Citibank who took leaves of absence between 1996 and the present, alone would take at least 100 hours. (Id. at ¶ 7.) Production of the information in Citibank's records would do nothing to establish the reasons for the leave, whether the leaves were for disability or any other medical reason, or whether the leave had been granted as a reasonable accommodation, since Citibank does not have such information in its records.

### III. ARGUMENT

Parties may obtain discovery of matters relevant to the claims and defenses of any party to the litigation. Fed. R. Civ. P. 26(b). Discovery cannot be had if it does not appear reasonably calculated to lead to the discovery of admissible evidence, id.; "discovery, like all matters of procedure, has ultimate and necessary boundaries," Hickman v. Taylor, 329 U.S. 495, 507 (1947). The scope of discovery is within the discretion of the trial court, Public Loan Co. v. FDIC, 803 F.2d 82, 86 (3d Cir. 1986), and the court need not compel discovery if it determines that a request is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive . . . or the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(i), (iii).

#### A. The Information That The EEOC Has Requested Regarding Leaves of Absences of Other Citibank Employees Is Not Relevant To This Litigation.

Although the discovery rules are afforded liberal construction, discovery does have "ultimate and necessary boundaries." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351

---

[9] Some of the archived information that existed only in hardcopy was destroyed in the Iron Mountain warehouse fire in 1997, and thus, Citigroup may not retain documents regarding the duration of all employee leaves of absence taken by Citibank Delaware employees from 1996 until the present. Ex. L at ¶ 4.

(1978). "While it is true that relevance in discovery is broader than that required for admissibility at trial, 'the object of the inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue.'" <u>Volvo Trucks N.A., Inc. v. Crescent Ford Truck Sales, Inc.</u>, No. 02-3398, 2005 WL 1400461, at *2 (E.D. La. June 1, 2005)[10] (slip copy) (citing <u>Zenith Elec. Corp. v. Exzec, Inc.</u>, 1998 WL 9181, at *3 (N.D. Ill. 1997)). Courts also recognize that "the legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." <u>Id.</u> (citing <u>Zenith Elec. Corp.</u>, 1998 WL 9181 at *3). "[E]ven though the standard for relevancy for discovery purposes is a liberal one, . . . the parties should not be permitted to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that is might conceivably become so." <u>Hill v. Motel 6</u>, 205 F.R.D. 490, 493, n.2 (S.D. Oh. 2001) (citing <u>Blum v. Schlegel</u>, 150 F.R.D. 38, 39 (W.D.N.Y. 1993)).

       The EEOC simply cannot demonstrate the relevancy of the broad discovery that it seeks in connection with this action or that the information that it seeks will lead to the discovery of admissible evidence. In support of its Motion, the EEOC has asserted that the Court should force Citibank to search all of its personnel files for leave of absence records for individuals employed by Citibank from 1996 to the present so that the EEOC may demonstrate Citibank's policies with respect to granting extended leaves of absence as a reasonable accommodation. However, the EEOC cannot point to one case in which the Court allowed a plaintiff to obtain discovery

---

[10]    Copies of all reported cases are attached hereto as Exhibit N.

9

regarding every leave of absence for an extended time period that any employee of a company was permitted to take. (See EEOC's Motion to Compel, D.I. 34.)[11]

Even if the EEOC could demonstrate that a party is entitled to such information in order to demonstrate that an employee was entitled to a reasonable accommodation, the EEOC should not be allowed such information in this case because it will shed no light on its claim that Citibank should have engaged in an interactive process with Ms. Jenkins.

The absence of relevancy is apparent in this case because, not only has the EEOC failed to establish that Citibank knew of Ms. Jenkins' medical condition, knew that it was a disability and that Citibank was required to engage in the interactive process and offer Ms. Jenkins additional leave (Ex. A at 130-33; Ex. C at 86-89; Ex. G at 38-46), as explained below, the undisputed record facts are that Citibank had no such knowledge. It is clear that under the ADA, an employer is not required to take part in the interactive process to identify an appropriate accommodation until an employee has provided the employer with notice of the disability and a request for an accommodation. Jones v. U.P.S., 214 F.3d 402, 407-408 (3d Cir. 2000). When an employee fails to request a reasonable accommodation, the employer is not required to engage in the interactive process. Id. at 408. While, giving an employer notice of a desire for an accommodation does not require the use of the words "reasonable accommodation," the "notice

---

[11] In Rascon v. U.S. West Communications, Inc., 143 F.3d 1324, 1334-1335 (10th Cir. 1998), (cited by EEOC) the Court considered the employer's leave policy in general when deciding whether leave was a reasonable accommodation, and it did not consider broad statistical evidence regarding the duration of all leaves of absences taken the company's employees, nor did it indicate that a plaintiff is entitled to such broad discovery to establish that he or she is entitled to a reasonable accommodation. Similarly, in Shannon v. City of Philadelphia, 98-5277, 1999 WL 1065210, at *6-7 (E.D. Pa. Nov. 23, 1999) and Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775, 783 (6th Cir. 1998) the Court did not consider broad statistical evidence regarding the duration of all leaves of absences taken the company's employees, nor did it indicate that a plaintiff is entitled to such broad discovery to establish that he or she is entitled to a reasonable accommodation. To the extent that the EEOC asserts that it is entitled to present evidence regarding the duration of other Citibank employees' leaves to establish Citibank's leave policies in support of its futile argument that Jenkins was entitled to a reasonable accommodation, the EEOC by its own admission has already adduced such evidence during the depositions of the MetLife employees. See Motion to Compel at 6, D.I. 34.

10

must make clear that the employees wants assistance with his or her disability." Id. (citations omitted). When an employee makes a mere request for continued disability benefits, that request is not sufficient for a request for an accommodation to be inferred. Id. (affirming summary judgment for the employer; stating that the record reflects that the only request made by [the employee] of [the employer] was for continued payment of disability benefits. Because there is no evidence from which a request for an accommodation could be inferred, [the employer] was under no legal obligation to engage in the interactive process.").

Like the employee in Jones, the record evidence is undisputed that Ms. Jenkins never gave Citibank notice that she was requesting an accommodation. (See Ex. C at 86-89; Ex. A at 130-133; Ex. G at 38-46.) Specifically, it is beyond dispute that Sara Zobel, the individual who made the decision to terminate Ms. Jenkins had no knowledge that Ms. Jenkins' doctor had not released her to return to work until June 6, 2002. (Ex. C at 99-101) It is undisputed that, Citibank only knew that Ms. Jenkins had appealed MetLife's denial of her continued STD benefits, and that this appeal had been denied. (Id. at 78 & 82; Ex. D at ML0061.) It is also undisputed that Citibank had no information about Ms. Jenkins' medical condition (Ex. C at 82-85). Simply put, Citibank's lack of such knowledge defeats the EEOC's ability to establish that Citibank was required to engage in an interactive process with Ms. Jenkins. Thus, the information sought by the EEOC regarding the leaves of absences of other Citibank employees is clearly irrelevant and not likely to lead to the discovery of admissible evidence. On that basis, the EEOC's motion should be denied.

      **B.**     **Even If Information Regarding The Duration Of Leaves Of Other Employees Were Relevant, The Burden And Expense Of The Proposed Discovery Outweighs The Benefit, And The EEOC's Motion Should Be Denied.**

The Court should also deny the EEOC's Motion on the grounds that the burden and expense of the proposed discovery outweigh its likely benefit. See Bates v. Tandy Corp., 03-

5519, 2005 WL 1162502, at *1-2 (E.D. Pa. May 17, 2005) (denying plaintiffs' motion to compel nationwide discovery because it would require "over 1000 hours and six months of data retrieval and formatting," which would provide plaintiffs with a "limited benefit."). To obtain information regarding durations of leave, Citibank would have to conduct a review of numerous records to determine which individuals it employed from 1996 to the present, that extensive research would require an inestimable amount of time. (See Ex. L at ¶ 6.) After that review, it would have to then review thousands of files to determine who took a leave of absence and to determine the duration of the leave(s). (See Id. at ¶ 7.) The search of the computerized systems alone would take Citibank at least 100 hours, and it would be necessary to search hardcopy records as well. (Id.) As set forth above, the information would provide the EEOC with no information bearing on its claim, and thus is of no benefit. For this additional reason, the Court should deny the EEOC's motion.

### C. Certain Information And Documents Requested By The EEOC Are Not Within Citibank's Possession Custody Or Control.

Pursuant to Federal Rules of Civil Procedure 33 and 34, a party is only required to provide information within its possession, custody and/or control. See Fed. R. Civ. P. 33 & 34. It necessarily follows that if such information is not within a party's possession, custody and/or control, it is not required to produce it. Id.

Most of the information that the EEOC has requested from Citibank is not within Citibank's possession, custody and/or control. (See Ex. I; Ex. H at CB00145.) Instead, it is within the possession, custody and/or control the TPA. (Ex. I.) The TPA is not permitted to provide Individually Identifiable Participant Information to Citibank without obtaining a written authorization from each Participant. (Ex. H at CB00145.) Although Citibank was not required to do so, in January of 2006, it disclosed the location of the information and documents to the

EEOC. (Ex. J.) On January 18, 2006, it provided a copy of the Administrative Services Agreement to the EEOC. (Letter from Pontoski to Locke of January 18, 2006, attached hereto as Exhibit M.) Despite Citibank's disclosure, nearly six months prior to the close of discovery, the EEOC never requested this information from MetLife or CNA. (See Ex. K.) If the EEOC wanted the information, it should have requested it from MetLife and CNA during the discovery period. It failed to do so, and thus, should not now be allowed to impose on Citibank the obligation to gather information from non-parties whose existence and possession of the information has been known to EEOC for almost six months.[12]

---

[12] Moreover, it would be unduly burdensome for Citibank and/or the TPA to produce this information, as they would need to obtain written authorizations from each individual who took a leave of absence. In addition, the government has not demonstrated a particularized need for this discovery that would justify the intrusion into the privacy rights of third parties that this production requires. See U.S. v. Fed'n of Physicians and Dentists, Inc., 63 F. Supp. 2d 475, 479-80 (D. Del. 1999) (Holding that non-party physicians' privacy concerns outweighed government's interest in obtaining discovery of individual financial information related to labor organization's recruitment of physicians during their fee negotiations with insurer where records sought were only remotely connected to government's claims, and government's request was based on speculative argument.)

## IV. CONCLUSION

For the foregoing reasons, the Court should deny the EEOC's Motion to Compel.

Respectfully submitted:

*James H. McMackin III (#4284)* for *David H. Williams*
David H. Williams (#616)
Morris James Hitchens and Williams, LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900
dwilliams@morrisjames.com

OF COUNSEL:

Judith E. Harris
Sarah E. Pontoski
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5028/5059
jeharris@morganlewis.com
spontoski@morganlewis.com

Dated: August 3, 2006

Attorneys for Defendant
Citibank Delaware

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05-348 JJF |
| CITIBANK DELAWARE, | ) ) ) | |
| Defendant. | ) | |

### CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on August 3, 2006, I electronically filed the attached **BRIEF IN SUPPORT OF DEFENDANT CITIBANK DELAWARE'S RESPONSE TO PLAINTIFF EEOC'S MOTION TO COMPEL DEFENDANT CITIBANK DELAWARE'S DISCOVERY RESPONSES** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Cynthia A. Locke, Esquire
Equal Employment Opportunity
Commission
The Bourse
21 S. 5th Street, Suite 400
Philadelphia, PA 19106

Douglas McCann, Esquire
Assistant United States Attorney
Chief, Civil Division
The Nemours Building
1007 North Orange Street, Suite 700
Wilmington, DE 19899-2046

_James H. McMackin III (#4284) for David H. Williams_
David H. Williams (#616)
Morris, James, Hitchens & Williams, LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900
dwilliams@morrisjames.com

OF COUNSEL:

Judith E. Harris
Sarah E. Pontoski
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5028/5059

Dated: August 3, 2006          Attorneys for Defendant

DHW/109990-0001/1438305/1