# Exhibits K through N

# Exhibit K

Jun-28-06  02:48pm  From-EEOC LEGAL UNIT                                    T-379  P.003/008  F-458

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF       CONNECTICUT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,                                    ## SUBPOENA IN A CIVIL CASE

V.                              CASE NUMBER: [1]

                                             CIVIL ACTION NO. 05-348 (JFF)

CITIBANK DELAWARE,

      Defendant.

TO:  PAULA BIANCHI
     C/O CT CORPORATE SYSTEMS
     1 COMMERCIAL PLAZA
     HARTFORD, CT 06103   AGENT FOR METROPOLITAN LIFE INSURANCE COMPANY OR MET LIFE, INC. (PARENT)

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | BRANDON SMITH REPORTING SERVICES<br>44 CAPITOL AVENUE<br>HARTFORD, CT 06106 | DATE AND TIME<br>JULY 13, 2006, 10:000AM OR AS<br>OTHERWISE ADJOURNED. |
|---|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

CASE FILE FOR TERRY B. JENKINS, SSN 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, INCLUDING BUT NOT LIMITED TO: PLEASE SEE ATTACHED SCHEDULE A.

| PLACE  BRANDON SMITH REPORTING SERVICES<br>44 CAPITOL AVENUE<br>HARTFORD, CT 06106 | DATE AND TIME<br>JULY 13, 2006, 10:00AM |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30 (b) (6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>*[signature]*<br>CYNTHIA A. LOCKE, TRIAL ATTORNEY    (ATTORNEY FOR PLAINTIFF) | DATE<br>*June 28, 2006* |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER<br>CYNTHIA A. LOCKE, TRIAL ATTORNEY<br>U.S.EEOC, Philadelphia District Office, 21 S. Fifth St., Suite 400, Phila., PA 19106-2515  (215) 440-2683 | DATE<br>*June 28, 2006* |

(See Rule 45: Federal Rules of Civil Procedure. Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials s or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule,

such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

1.  All requests for medical leave made on behalf of Terry B. Jenkins from November 1, 2001 through May 31, 2002.

2.  All documents provided by Ms. Jenkins, her physicians, or anyone acting on behalf of Ms. Jenkins, in support of her requests for medical leave, her claim for disability benefits, and/or the appeal of the denial of her claim, from November 1, 2001 through May 31, 2002.

3.  All documents that memorialize, discuss or describe conversations or communications that Terry Jenkins, any of her physicians, or anyone acting on her behalf had with any representatives of Metropolitan Life Insurance Company or Met Life, Inc., with regard to Ms. Jenkins' medical condition, requests for leave, claim for disability, the denial of her claim or the appeal of her claim from November 1, 2001 to May 31, 2002.

4.  All documents that memorialize, discuss or describe conversations or communications that Sara Zobel or anyone from Citibank Delaware or Citigroup had with any representatives of Metropolitan Life Insurance Company or Met Life, Inc., with regard to Ms. Jenkins' medical condition, requests for leave, claim for disability, the denial of her claim or the appeal of her claim from November 1, 2001 to May 31, 2002.

5.  All correspondence between Sara Zobel or anyone from Citibank Delaware or Citigroup and any representatives of Metropolitan Life Insurance Company or Met Life, Inc., with regard to Ms. Jenkins' medical condition, requests for leave, claim for disability, the denial of her claim or the appeal of her claim from November 1, 2001 to May 31, 2002.

Jun-28-06   02:50pm   From-EEOC LEGAL UNIT                                    T-379   P 006/008   F-458

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

DISTRICT OF _____ **CONNECTICUT**

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

            V.

CITIBANK DELAWARE,

    Defendant.

### SUBPOENA IN A CIVIL CASE

CASE NUMBER: [1]

CIVIL ACTION NO. 05-348 (JFF)

TO:  **THOMAS TAWYER**
    C/O CT CORPORATE SYSTEMS
    1 COMMERCIAL PLAZA
    HARTFORD, CT 06103   AGENT FOR METROPOLITAN LIFE INSURANCE COMPANY OR MET LIFE, INC. (PARENT)

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| BRANDON SMITH REPORTING SERVICES 44 CAPITOL AVENUE HARTFORD, CT 06106 | JULY 13, 2006, 3:00PM OR AS OTHERWISE ADJOURNED. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

CASE FILE FOR TERRY B. JENKINS, SSN 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, INCLUDING BUT NOT LIMITED TO: PLEASE SEE ATTACHED SCHEDULE A.

| PLACE | DATE AND TIME |
|---|---|
| BRANDON SMITH REPORTING SERVICES 44 CAPITOL AVENUE HARTFORD, CT 06106 | JULY 13, 2006, 3:00PM |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30 (b) (6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Cynthia L. Locke* CYNTHIA A. LOCKE, TRIAL ATTORNEY     (ATTORNEY FOR PLAINTIFF) | *June 28, 2006* |

| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | DATE |
|---|---|
| CYNTHIA A. LOCKE, TRIAL ATTORNEY U.S.EEOC, Philadelphia District Office, 21 S. Fifth St., Suite 400, Phila., PA 19106-2515   (215) 440-2683 | *June 28, 2006* |

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

Jun-28-06    02:50pm    From-EEOC LEGAL UNIT                    T-379    P.007/008    F-458

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials s or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance:
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule,

such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

1.    All requests for medical leave made on behalf of Terry B. Jenkins from
      November 1, 2001 through May 31, 2002.

2.    All documents provided by Ms. Jenkins, her physicians, or anyone acting on
      behalf of Ms. Jenkins, in support of her requests for medical leave, her claim for
      disability benefits, and/or the appeal of the denial of her claim, from November 1,
      2001 through May 31, 2002.

3.    All documents that memorialize, discuss or describe conversations or
      communications that Terry Jenkins, any of her physicians, or anyone acting on
      her behalf had with any representatives of Metropolitan Life Insurance Company
      or Met Life, Inc., with regard to Ms. Jenkins' medical condition, requests for
      leave, claim for disability, the denial of her claim or the appeal of her claim from
      November 1, 2001 to May 31, 2002.

4.    All documents that memorialize, discuss or describe conversations or
      communications that Sara Zobel or anyone from Citibank Delaware or Citigroup
      had with any representatives of Metropolitan Life Insurance Company or Met
      Life, Inc., with regard to Ms. Jenkins' medical condition, requests for leave, claim
      for disability, the denial of her claim or the appeal of her claim from November 1,
      2001 to May 31, 2002.

5.    All correspondence between Sara Zobel or anyone from Citibank Delaware or
      Citigroup and any representatives of Metropolitan Life Insurance Company or
      Met Life, Inc., with regard to Ms. Jenkins' medical condition, requests for leave,
      claim for disability, the denial of her claim or the appeal of her claim from
      November 1, 2001 to May 31, 2002.

# Exhibit L

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : | |
| | : | |
| Plaintiff, | : | CASE NO. 05-348 |
| | : | |
| v. | : | |
| | : | |
| CITIBANK DELAWARE | : | |
| | : | |
| Defendant. | : | |

## DECLARATION OF MARLEEN SOOHOO

I, Marleen Soohoo hereby declare as follows:

1.     I am currently employed by Citigroup, Inc. as Manager of CES Warehouse Operations and Information Delivery; Client Support and Relations.

2.     My job responsibilities include supporting the HR Weblink System. I also liaise with the North America PeopleSoft System for Citigroup, Inc. to support the HR function. The HR Weblink System and the North America PeopleSoft System are electronic database systems that house information regarding the employees of several entities, including Citibank Delaware. Such information includes, *inter alia,* employee dates of hire, duration of employee leaves of absence, and employee termination dates. Thus, I have knowledge relating to Citigroup, Inc.'s retention of historical information regarding the duration of leaves of absence taken by Citibank Delaware employees from 1996 to the present.

3.     On or about 2001, Citibank was converted to Travelers Group. At that point, some of Citibank's current employee information was converted to two HR systems: (1) North America PeopleSoft System and (2) HR Weblink System. This conversion was done based upon the employees' business expense codes. Employee information for employees who were

terminated from Citibank prior to 2001 was not converted. In 2005, the HR Weblink System converted some of its current employee information to the North America PeopleSoft System. However, some of the archived information regarding current employees remained on the HR Weblink System. In addition, as stated previously, employee information for Citibank employees who termed prior to 2001 exists only either in hardcopy or on a legacy Citibank HR system.

4.    At this time, Citigroup, Inc. cannot determine what archived records exist merely in hardcopy and what archived information was transferred to the HR Weblink System and/or the North America PeopleSoft System. In addition, some of the archived information that existed only in hardcopy was destroyed in the Iron Mountain warehouse fire in May 1997, and thus, Citigroup, Inc. may not retain documents regarding the duration of all employee leaves of absence taken by Citibank Delaware employees from 1996 until the present.

5.    The HR Weblink System and the North America PeopleSoft System do not maintain compiled information regarding employee leaves of absence in a single file. Instead, to determine whether an employee took a leave of absence and to determine the duration of the leave of absence, Citigroup, Inc. must look at individual employee's information separately.

6.    In order for Citigroup, Inc. to search the HR Weblink System and the North America PeopleSoft System for information regarding the duration of employee leaves of absence from 1996 to the present, Citigroup, Inc. would first need to determine what employees Citibank Delaware employed from 1996 to the present. To do so, Citigroup, Inc. would have to enter business expense codes into the systems. To obtain these expense codes, Citigroup, Inc. would have to undertake extensive historical research. The amount of time that it would take to

identify these expense codes and therefore identify an accurate employee population for Citibank Delaware between 1996 to the present is inestimateable.

7.      After identifying an accurate Citibank Delaware employee population, it would take Citigroup, Inc. at least 100 hours to search its HR Weblink System and North America PeopleSoft System to identify current and former employees of Citibank Delaware who took leaves of absence between 1996 and the present.  In addition, Citigroup, Inc. would also have to search hardcopy records for all employee information that is not included on one of these systems.  Because of the loss of certain archived hardcopy records, Citigroup, Inc. cannot ensure that this search would uncover information regarding all Citibank Delaware employees who took leaves of absence between 1996 and the present.

I hereby verify that the statements in this Declaration are true and correct and made subject to the penalties of 28 U.S.C. § 1746 relating to unsworn falsification to authorities.

Dated:  8/3/2006                    _Marl Soohoo_____
                                    Marleen Soohoo

# Exhibit M

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Sarah E. Pontoski**
215.963.5059
spontoski@morganlewis.com
eFax: 877.432.9652

January 18, 2006

**VIA FEDERAL EXPRESS**

Cynthia A. Locke, Esquire
EEOC Trial Attorney
U.S. Equal Employment Opportunity Commission
21 South Fifth Street, Suite 400
Philadelphia, PA 19106-2516

Re:    EEOC v. Citibank Delaware
       C.A. No. 05-348 (JJF)

Dear Cynthia:

Enclosed please find Defendant's Responses to Plaintiff EEOC's First Request for Production of
Documents to Defendant Citibank Delaware and Defendant Citibank Delaware's Objections and
Responses to Plaintiff EEOC's First Set of Interrogatories.

Very truly yours,

Sarah E. Pontoski

SEP/jk

Enclosures

# Exhibit N

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2005 WL 1400461 (E.D.La.)
**(Cite as: 2005 WL 1400461 (E.D.La.))**



**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Louisiana.
VOLVO TRUCKS NORTH AMERICA, INC.
v.
CRESCENT FORD TRUCK SALES, INC.
**No. Civ.A. 02-3398.**

June 1, 2005.

Sidney Levin Shushan, Jonathan Marks Shushan, Guste, Barnett & Shushan, LLP, New Orleans, LA, for Volvo Trucks North America, Inc.

Leonard Louis Levenson, Colleen Boyle Gannon, Weigand & Levenson, New Orleans, LA, for Crescent Ford Truck Sales, Inc.

ROBY, Magistrate J.

**\*1** Before the Court is a Motion to Quash 30(b)(6) Notice and Hutchinson Deposition Notice by Crescent to Volvo (doc.# 117) filed by the plaintiff, Volvo Trucks North America ("Volvo") to quash the deposition of Gilbert Hutchinson, a former Volvo employee who was its District Service Manager at the time of the lease, scheduled for deposition on June 1, 2005. Volvo also seeks to quash Crescent's 30(b)(6) notices for depositions scheduled for June 2 and 3, 2005. The defendant, Crescent Ford Truck Sales ("Crescent") opposes the motion. The Court granted the plaintiff's motion for expedited hearing and a hearing, by telephone conference, was held on May 31, 2005.

I. *Factual and Procedural Background*

This case stems from an alleged breach of contract by Crescent due to Volvo's 1996 lease of a fleet of custom-built trucks to Luciano Refrigerated Transports ("Luciano"). Crescent was the Volvo dealer who assisted Luciano with lease negotiations. Volvo claims that Crescent breached its Dealer Service Agreement ("the Agreement") when its sales manager signed Louis Saia's (Luciano's president) name, to

the warranty registration certificate. Volvo contends that a Luciano representative was required to sign the certificate pursuant to the Agreement and the provisions of the warranty registration certificate. However, Crescent contends that Saia authorized it to sign the warranty certificate on his behalf.

It is important to address the circumstances of the bankruptcy proceeding instituted by Luciano in 1999, whereby Volvo was named as a defendant. According to Luciano's complaint, Crescent, Volvo Trucks and Volvo Finance made certain representations concerning warranties of the trucks. Based on these oral and written representations, Luciano believed it was being provided a bumper-to-bumper basic warranty, and accordingly, paid $185,000.00 for the warranty for the 50-fleet of trucks, however, Luciano was never provided a copy of the warranty. Luciano experienced mechanical breakdowns, malfunctions, and difficulties with the trucks, and incurred repair costs and towing costs, which Volvo Trucks was to reimburse pursuant to the warrant, but it refused to do so.

In its bankruptcy complaint, Luciano cited numerous claims, including breach of its lease by Volvo, material and/or fraudulent misrepresentations, breach of warranty, and damages including repair costs, towing charges, replacement truck rentals, loss of profits, and goodwill. (See doc. # 117, Annex "A"). In November 2000, Volvo filed a third-party complaint against Crescent alleging breach of contract which was dismissed by the bankruptcy court for lack of subject matter jurisdiction. In January 2002, Volvo settled its claims with Luciano for $475,000.00. In November 2002, Volvo instituted the instant breach of contract action against Crescent for alleged violations of its Dealer Service Agreement.

On March 8, 2005, Crescent served a 30(b)(6) deposition notice on Volvo, scheduling its corporate deposition for August 23, 24, and 25, 2005. Subsequently, Crescent twice amended this notice to narrow the issues to seven areas of inquiry and to reschedule the depositions for June 2 and 3, 2005. Also, on May 16, 2005, Crescent issued a 30(b)(6) notice for the June 1, 2005 deposition of Gilbert Hutchinson, a former Volvo employee who, in 2000, reviewed Luciano's unpaid warranty claims, which is scheduled to take

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 1400461 (E.D.La.)
**(Cite as: 2005 WL 1400461 (E.D.La.))**

place in Greensboro, NC.

**\*2** Volvo seeks to quash these depositions because (1) the Court's May 18, 2005 ruling in favor of Crescent should apply to the subject notice as it exceeds, in scope, the issues in dispute, (2) it has no obligation to produce Hutchinson, a non-employee, (3) the notice scheduling the deposition and its timing are not reasonable and should be reset.

Crescent contends that (1) the remaining areas have been narrowed and are relevant to Volvo's breach of contract claims against it, (2) the District Judge ordered Hutchinson's deposition due to Volvo's inability and/or refusal to produce him without a subpoena, and (3) that discovery should not be stayed pending the rulings on the cross-motions for summary judgment or on Volvo's motion to amend its complaint.

III. *Legal Analysis and Recommendation*

A. *Scope of Discovery*

Federal Rule of Civil Procedure 26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged that is relevant to the claim or defense of any party ..." Further, discovery may be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit ..." Fed.R.Civ.P. 26(b)(2).

The discovery rules are accorded a broad and liberal treatment to affect their purpose of adequately informing litigants in civil trials. *Hebert v. Lando*, 441 U.S. 153, 176, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)), and "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. Am. Red*

*Cross,* 23 F.3d 1091, 1096 (6th Cir.1994).

Courts have recognized that while it is true that relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith Elec. Corp. v. Exzec, Inc.,* 1998 WL 9181, *3 (N.D .Ill 1998) (quoting *Piacenti v. Gen. Motors Corp.,* 173 F.R.D. 221, 223 (N.D.Ill.1997)). Further, the information must be "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Courts have also recognized that "the legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Id.* Therefore, discovery methods shall be limited by the Court if it determines that the discovery sought is unreasonably cumulative or duplicative. Fed. R. Civ. Proc. 26(b)(2)(i).

B. *Discovery at Issue*

1. *The 30(b)(6) Deposition Notice*

**\*3** According to Volvo, the 30(b)(6) discovery dispute concerns the following areas of inquiry, which are categorically grouped pursuant to the numerical designation in the Amended notice:

  a. *Inquiries related to the Luciano Warranty Claims*
(1) The warranty claims submitted by Luciano and the handling and disposition of those claims by Volvo.
(4) The warranty claims identified in and the lists identified as warranty lists A, B, C, & D in the Luciano litigation, the preparation of these lists, the meaning of these lists and whether any of the claims listed thereon were paid or denied, and for what reason(s).
(6) Volvo's "warranty experience" with Luciano, including but not limited to repair work performed by non-authorized dealers, (other than those which were the subject of the Bankruptcy Adversary Proceeding Number 99-1224) repair work performed by authorized dealers, the denial of by authorized dealers of warranty claims submitted by Luciano and/or authorized or non-authorized dealers.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                        Page 3
Not Reported in F.Supp.2d, 2005 WL 1400461 (E.D.La.)
(Cite as: 2005 WL 1400461 (E.D.La.))

Volvo objects on the grounds of relevancy, vagueness, over broad as it relates to hundreds of claims, and duplicative of other requests. Volvo further argues that based on this request, the defendant is seeking to litigate the validity of every claim Luciano submitted. Also, Volvo claimed that it never agreed to produce a witness who would testify regarding paid or unpaid warranty claims.

In response, Crescent argues that its alleged breach of the Agreement by Volvo is based on Volvo's settlement of Luciano's claims for breach of warranty in the bankruptcy proceeding. Therefore, according to Volvo, these categories are relevant as they relate to Volvo's failure to pay its obligated warranties and to Volvo's burden of proving causation for the alleged damages it sustained. Further, Crescent contends that Volvo's failure to pay its warranty obligations cannot be included in its damages claims against Crescent. Volvo further clarified that scope of Inquiry 6 was limited to the fifty trucks at issue in this litigation.

The Court notes that the subject discovery, while limited to the fifty trucks, is relevant because it seeks to obtain information regarding Volvo's payment of warranty claims when submitted by other authorized/non-authorized dealers. If Volvo paid warranty claims to other dealers, such a practice could call into question its decisions not pay Luciano's claims. Therefore, the subject information is discoverable.

b. *Inquiry related to the Sale and Manufacture of Volvo Trucks*

(2) The sale and manufacture of Volvo Heavy Trucks in 1996-1997 in general and specifically the sale and manufacture of the Luciano Trucks.

Volvo objects on the grounds of relevancy, over broad as it would include thousands of trucks and customers, and requires disclosure of highly confidential sales information and procedures. Further, according to Volvo, the aspects of the Luciano sales transaction have been addressed in Volvo's employees' depositions. Also, Volvo contends that the manufacturing inquiry is irrelevant as this is not a products liability case.

**\*4** During the hearing, Crescent conceded that this request, as written, is over broad. However, Crescent further con-

tends that it clarified its request in two letters, so that this inquiry requests Volvo to confirm, as it alleged, whether it is true that trucks are not manufactured until Volvo has a signed warranty certificate in its possession. Therefore, Crescent contends that this information is relevant to Volvo's claim that the Luciano trucks would not have been built if Saia had signed the basic warranty registration certificate.

The Court, therefore finds, subject to Crescent's clarification and modification, that this request is relevant. Therefore, the subject information is discoverable.

c. *Inquiries concerning the Warranty Expenses and Pricing*

(7) Projected, anticipated, or estimated warranty expenses for the type of truck, engine and components sold to Luciano, and any data, analysis and research concerning warranty trends, failure rates, reliability, and expected repair costs for the type of truck, engine and components sold to Luciano, their engines and components.

(8) The pricing of and determination of pricing for the warranty or warranties purchased by Luciano in the Luciano Truck Transaction, the method by which the cost/price was determined (charged separately not part of the truck sale price), and the reason that Crescent was required to pay part of the charge for the custom, additional or special warranty or warranties.

(9) The relationship between Volvo and Volvo Truck Finance North America ("VTFNA") at the time of the Luciano Truck transaction, including but not limited to whether anything of value was paid by VTFNA to Volvo on the financing charges.

Volvo objects to this request on the grounds of relevancy, vagueness, and that the information has been provided by one of its employees, David Bachmeier, who testified to information concerning inquiry 7. Further, according to Volvo, VFTNA is not a party to this case, and Volvo's dealings with it are outside the scope of discovery. Volvo further noted that if Crescent is seeking a set-off of the $25,000.00 it allegedly paid to cover the warranty costs due to someone's mathematical error, that these inquiries do not accomplish this objective and as such, are beyond the scope of discovery.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 4
Not Reported in F.Supp.2d, 2005 WL 1400461 (E.D.La.)
**(Cite as: 2005 WL 1400461 (E.D.La.))**

In response, Crescent argues that these inquiries relate to the method Volvo uses to evaluate and price requests for warranty coverage, and how Volvo and VTFNA did so in the Luciano transaction. At the hearing, Crescent withdrew Inquiry 9, but contends that the remaining inquiries are relevant to the issue of whether Volvo sold a "special warranty" as Luciano alleged and whether the settlement between Volvo and Luciano was reasonable, as Volvo's expert opined. Crescent further contends that there is an issue as to whether Luciano's warranty claims may have exceeded price of the warranty.

At the hearing, the Court, deferred ruling on remaining Inquiries 7 and 8. However, upon further consideration of Inquiries 7 and 8, the Court finds that these areas are not relevant at this time.

*2. The Hutchinson Deposition Notice*

**\*5** Volvo contends that this notice, scheduling the June 1 deposition of Gilbert Hutchinson ("Hutchinson"), should be quashed due to the timing of the notice (May 16, 2005), the issues are not yet sufficiently narrowed, and that the cost and expense of traveling to Greensboro, NC should be considered. Volvo also indicated that it will be unable to produce Hutchinson for deposition on June 1. As such, Volvo proposed that this deposition be postponed for thirty days pending the ruling on the cross-motions for summary judgment, set for hearing on June 1, 2005.

According to Crescent, Volvo has shown no good cause to cancel this deposition, noting that (1) the notice was issued on May 16, 2005 and (2) the deposition had been discussed between the parties and two dates, (April 28 & 29, 2005) were held open, pursuant to the April 5, 2005 order by the District Judge. (See Rec. Doc. Nos. 91 and 92.).

The Court finds, however, that discovery should not be postponed and that all scheduled depositions shall proceed as scheduled. Volvo has not asserted a compelling reason to postpone discovery nor to quash the Hutchinson notice as there was no objection to this deposition until this Court's ruling on May 18, 2005, quashing Volvo's 30(b)(6) notice.

Further, on March 31, 2005, the parties submitted a Joint

Motion to Set the Deposition Schedule which the District Judge ordered on April 5, 2005. Therefore, considering that Hutchinson is unavailable for deposition on June 1, the Court orders Volvo to produce Hutchinson on June 2, 2005.

Also, the Court finds that Volvo's counsel has shown undue delay in notifying Crescent's counsel of Hutchinson's unavailability. The Court therefore finds that Volvo's counsel shall be required to pay the reasonable expenses incurred by Crescent's counsel for the June 1 deposition and its rescheduling, if any, to be determined by the Court on motion of Crescent, along with appropriate documentation. Since June 1 and 2 were no longer good days, according to Volvo's counsel, two days shall be appended to the scheduled date of June 2, 2005.

Accordingly,

IT IS ORDERED that Volvo's Motion to Quash 30(b)(6) Notice and Hutchinson Deposition Notice by Crescent to Volvo (doc.# 117) is DENIED IN PART, GRANTED IN PART, AND CONTINUED IN PART, in accordance with this Minute Entry as follows:

    1) DENIED IN PART to the extent that it seeks to quash inquiries 1, 2, 4, and 6 as set forth in Crescent's May 16, 2005 amended notice of deposition;
    2) GRANTED IN PART to the extent that it seeks to quash inquiries 7 and 8 as set forth in Crescent's May 16, 2005 amended notice of deposition;
    3) DENIED IN PART to the extent that it seeks to quash the June 1, 2005 deposition of Gilbert Hutchinson. The deposition shall be rescheduled to June 2, 2005.
    4) CONTINUED IN PART to July 13, 2005, to the extent that Crescent seeks reimbursement of reasonable expenses incurred in the rescheduling of the June 1, 2005 Hutchinson deposition.

**\*6** IT IS FURTHER ORDERED that Crescent shall submit the appropriate documentation, along with its motion seeking reimbursement of these expenses, within thirty days of the date of the signing of this order, setting this matter for hearing on July 13, 2005.

IT IS FURTHER ORDERED that the depositions scheduled for June 2 and 3, 2005, shall proceed as scheduled.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                              Page 5
Not Reported in F.Supp.2d, 2005 WL 1400461 (E.D.La.)
**(Cite as: 2005 WL 1400461 (E.D.La.))**

However, in the event that Crescent's counsel shall require additional time within which to conduct these depositions, Volvo's counsel shall afford Crescent's counsel two additional days this week in accordance with this order.

A recording of this hearing was made by the Court. The Court Recorder Supervisor is designated as custodian of the cassette tape used to record the hearing. To obtain a copy of this proceeding for the Court's findings, the parties should contact Betty DiMarco, Court Recorder Supervisor, (504) 589-7721.

Not Reported in F.Supp.2d, 2005 WL 1400461 (E.D.La.)

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 1783966 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Favor of Motion and Order to Reconsider the Court's Dicta in the Theriot Opinion of April 18, 2006 (May 1, 2006)Original Image of this Document with Appendix (PDF)

• 2006 WL 1354357 (Trial Motion, Memorandum and Affidavit) Opposition to Motion to Strike Charles Theriot's Report and Testimony (Apr. 11, 2006)Original Image of this Document (PDF)

• 2006 WL 1148183 (Trial Motion, Memorandum and Affidavit) Motion Behalf of Crescent Ford Truck Sales Inc. to Strike "Expert Report" of Charles Theriot and to Exclude His Testimony at Trial, or in the Alternative, to Limit His Testimony to His Opinion as to Luciano's Lost Profits as Expressed in His Preli minary Analysis (Mar. 23, 2006)Original Image of this Document with Appendix (PDF)

• 2006 WL 1148184 (Trial Motion, Memorandum and Affidavit) Opposition to Motion for Expedited Hearing of the Motion to Strike Charles Theriot's Report (Mar. 23, 2006)Original Image of this Document with Appendix (PDF)

• 2006 WL 360201 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Motion to Amend Complaint (Jan. 26, 2006)Original Image of this Document with Appendix (PDF)

• 2005 WL 2141082 (Trial Motion, Memorandum and Affidavit) Reply on Behalf of Crescent Ford Truck Sales Inc. to Opposition to Motion to Strike Expert Report and to Exclude Testimony of Frank Ruff (Jul. 6, 2005)Original Image of this Document (PDF)

• 2005 WL 2141083 (Trial Motion, Memorandum and Affidavit) Opposition on Behalf of Crescent Ford Truck Sales Inc. to Motion for Appeal from Magistrate's Discovery Order by Volvo Truck North America Inc. (Jul. 6, 2005)Original Image of this Document with Appendix (PDF)

• 2005 WL 2141080 (Trial Motion, Memorandum and Affidavit) Opposition on Behalf of Crescent Ford Truck Sales Inc. to Motion for Appeal of Court's Decision Granting Portions of the 30(b)(6) Notice of Luciano%n1%n by Volvo Truck North America Inc. (Jul. 5, 2005)Original Image of this Document with Appendix (PDF)

• 2004 WL 2685855 (Trial Motion, Memorandum and Affidavit) Reply Brief by Plaintiff in Support of Motion Under F.R.C.P. Rule 56 D (May 26, 2004)

• 2004 WL 2685843 (Trial Motion, Memorandum and Affidavit) Opposition on Behalf of Crescent Ford Truck Sales Inc. to Motion by Plaintiff for Clarification of Findings of Fact and Law Under F.R.C.P. Rule 56 (D). (May 19, 2004)

• 2004 WL 2685826 (Trial Motion, Memorandum and Affidavit) Opposition by Plaintiff to Motion by Defendant for Reconsideration of Written Reasons in Response to Oral Motion Under F.R.C.P. Rule 56 D (May 10, 2004)

• 2004 WL 2685813 (Trial Motion, Memorandum and Affidavit) Opposition on Behalf of Crescent Ford Truck Sales, Inc., to Motion to Deem Request Admitted by Plaintiff Volvo Trucks North America, Inc. (Mar. 24, 2004)

• 2004 WL 2685798 (Trial Motion, Memorandum and Affidavit) Opposition to Motion for Continuance by Defendant (Mar. 17, 2004)Original Image of this Document with Appendix (PDF)

• 2004 WL 2685784 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Motion for Summary Judg-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                     Page 6
Not Reported in F.Supp.2d, 2005 WL 1400461 (E.D.La.)
**(Cite as: 2005 WL 1400461 (E.D.La.))**

ment (Mar. 16, 2004)Original Image of this Document
(PDF)

• 2004 WL 2685774 (Trial Motion, Memorandum and Affi-
davit) Opposition on Behalf of Crescent Ford Truck Sales
Inc. to Motion for Complete or Partial Summary Judgment
Filed by Plaintiff Volvo Trucks North America Inc. (Mar. 9,
2004)

• 2004 WL 2685755 (Trial Motion, Memorandum and Affi-
davit) Memorandum in Opposition to Motion to Continue
Plaintiff's Motion for Summary Judgment (Feb. 25,
2004)Original Image of this Document (PDF)

• 2003 WL 23895373 (Trial Pleading) Answer to Cross
Claim (Dec. 4, 2003)Original Image of this Document
(PDF)

• 2003 WL 23895368 (Trial Pleading) First Amended An-
swer on Behalf of Crescent Ford Truck Sales Inc. to the
Complaint for Damages for Breach of Contract and for De-
claratory Judgment Brought by Volvo Trucks North Amer-
ica, Inc., (Nov. 6, 2003)

• 2003 WL 23895366 (Trial Motion, Memorandum and Af-
fidavit) Supplemental Memorandum in Opposition to
Plaintiff's Motion to Dismiss and/or Stay Proceedings (Apr.
24, 2003)Original Image of this Document (PDF)

• 2003 WL 23895361 (Trial Motion, Memorandum and Af-
fidavit) Supplemental Memorandum in Support of Motion
to Dismiss Complaint Brought by Volvo Trucks North
America, Inc. Against Crescent Ford Truck Sales, Inc., and/
or to Stay Proceedings (Apr. 16, 2003)Original Image of
this Document with Appendix (PDF)

• 2003 WL 23895356 (Trial Motion, Memorandum and Af-
fidavit) Reply to Opposition by Volvo to Motion to Dismiss
Complaint Brought by Volvo Trucks North America, Inc.
Against Crescent Ford Truck Sales, Inc. and/or to Stay Pro-
ceedings (Apr. 2, 2003)

• 2003 WL 23895349 (Trial Motion, Memorandum and Af-
fidavit) Opposition to Motion to Dismiss (Mar. 24,
2003)Original Image of this Document with Appendix
(PDF)

• 2003 WL 23895345 (Trial Pleading) Answer and Affirm-
ative Defenses on Behalf of Crescent Ford Truck Sales, Inc.
to Complaint for Damages for Breach of Contract and for
Declaratory Judgment Brought Byvolvo Trucks North
America, Inc. (Feb. 21, 2003)

• 2002 WL 32738055 (Trial Pleading) Complaint for Dam-
ages for Breach of Contract and for Declaratory Judgment
(Nov. 13, 2002)Original Image of this Document with Ap-
pendix (PDF)

• 2:02cv03398 (Docket) (Nov. 13, 2002)

END OF DOCUMENT

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 1162502 (E.D.Pa.)
**(Cite as: 2005 WL 1162502 (E.D.Pa.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Johnnie BATES, Overstone Cummings, and Todd Payne, on
their own behalf and all
others similarly situated, Plaintiffs,
v.
TANDY CORPORATION, d/b/a and a/k/a Radioshack Cor-
poration, Defendant.
**Civ.A. No. 03-5519.**

May 17, 2005.

***MEMORANDUM***
KELLY, Senior Judge.

**\*1** Presently before this Court is the Plaintiffs' Motion to
Strike Objections and to Compel Responses to Interrogator-
ies and Production of Documents. For the reasons that fol-
low, the Motion will be denied.

In this employment discrimination action brought pursuant
to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §
1981, Plaintiffs, who are current RadioShack employees, al-
lege that RadioShack improperly places African American
store managers in stores located in less affluent communi-
ties with lower sales volumes and does not promote African
Americans to managerial positions above the store manager
level.

Plaintiffs served their first set of interrogatories and docu-
ment requests on RadioShack on December 8, 2003.
Plaintiffs requested documents and information regarding
RadioShack's nationwide workforce including information
relating to the hiring, firing, promotion, elevation of and ter-
mination of every RadioShack Regional Director, District
Manager, and store manager, (Req.Produc.No. 6), and the
identity and race of every store manager in RadioShack's
stores for the past six years (Req.Produc.No. 10). Radi-
oShack responded to these requests with the following ob-
jection:

RadioShack objects to the discovery of documents and in-
formation outside its Philadelphia region. The glass ceil-
ing at issue in this case is founded on allegedly discrimin-
atory conduct in the evaluation and/or promotion of indi-
vidual plaintiffs--alleged conduct occurring wholly within
the Philadelphia region, at the hand of decision-makers
wholly within the Philadelphia region. This limitation,
therefore, is broad enough to afford the parties sufficient
information to evaluate the merits of Plaintiff's claims, de-
fenses to those claims, and the claims of any similarly
situated employees.

(Mem. L. Opp. Mot. Compel at 7). After periodic commu-
nications between the parties on this issue, Plaintiffs filed
the present motion on March 18, 2005. RadioShack respon-
ded on April 11, 2005.

"Parties may obtain discovery regarding any matter, not
privileged, that is relevant to the claim or defense of any
party," unless it does not appear reasonably calculated to
lead to the discovery of admissible evidence. Fed.R.Civ.P.
26(b); see also Hickman v. Taylor, 329 U.S. 495, 507, 67
S.Ct. 385, 91 L.Ed. 451 (1947). Discovery may not be had if
the request is "unreasonably cumulative or duplicative, or is
obtainable from some other source that is more convenient,
less burdensome, or less expensive ... or the burden or ex-
pense of the proposed discovery outweighs its likely bene-
fit." Fed.R.Civ.P. 26(b)(2).

In employment discrimination cases, discovery is usually
limited to information about employees in the same depart-
ment or office absent a showing of a more particularized
need for, and the likely relevance of broader information.
*Miller v. Yuasa-Excide, Inc.,* No. 94-1307, 1995 WL
606807 (D.Kan. July 17, 1995). When the employment de-
cisions were made locally, and in the absence of evidence of
practices and procedures applicable to all employing units,
discovery may properly be limited to the employing unit. *Id.*

Plaintiffs argue that they are entitled to nationwide discov-
ery on two grounds. First, Plaintiffs argue they are putative
representative plaintiffs in a class action alleging a nation-
wide pattern of employment discrimination and will need
the information to prove their class action case. Second,
Plaintiffs argue that a national policy or practice in fact ex-
ists at RadioShack with respect to what Plaintiffs character-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 1162502 (E.D.Pa.)
**(Cite as: 2005 WL 1162502 (E.D.Pa.))**

ize as a "two up" policy, in which major personnel decisions are made by managers in consultations with their immediate supervisors.

**\*2** Plaintiffs' class action arguments are unpersuasive. At present, Plaintiffs have failed to move for a certification of the class, and while the information might be relevant to the claims and defenses of such a class, it would not be necessary for the consideration of a motion to certify the class. *See* Fed.R.Civ.P. 23(a); *Cutner v. Atl. Richfield Co.,* No. 77-806, 1977 WL 15426 (E.D.Pa. June 17, 1977). It "should not usually be necessary to undertake extensive discovery to unearth initial clues suggesting that others are being discriminated against." *Cutner,* 1977 WL 15426 [unpaginated]. As to Plaintiffs' arguments regarding the "two up" consultation system for personnel actions, I see no reason why the alleged policy mandates nationwide discovery without the existence of a certified nationwide class. The discovery produced by RadioShack covers two levels of management above the Plaintiffs' positions.

Furthermore, RadioShack argues that providing nationwide discovery in the same manner as for the Philadelphia region would be unduly burdensome. Such an effort would require over 1000 hours and six months for data retrieval and formatting because RadioShack does not maintain the requested records in a manner responsive to Plaintiffs' requests. Preparation of the data relative to the Philadelphia Region required over 120 hours and extensive manual manipulation of the data. In light of the limited benefit to the Plaintiffs in an individual capacity from this nationwide data, I will not compel its production at this time.

An appropriate Order follows.

### ORDER
**AND NOW**, this 17 th day of May, 2005, upon consideration of Plaintiffs' Motion to Strike Objections and to Compel Responses to Interrogatories and Production of Documents (Doc. No. 8), and the Response in opposition thereto, it is hereby **ORDERED** that the Motion is **DENIED**.

Not Reported in F.Supp.2d, 2005 WL 1162502 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 2149978 (Trial Motion, Memorandum and Affidavit) Defendant RadioShack Corporation's Reply Memorandum of Law in Further Support of Its Motion for Summary Judgment (Jul. 12, 2005)Original Image of this Document (PDF)

• 2003 WL 23639925 (Trial Pleading) Answer and Affirmative Defenses (Nov. 26, 2003)Original Image of this Document (PDF)

• 2:03cv05519 (Docket) (Oct. 02, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 1999 WL 1065210 (E.D.Pa.), 17 NDLR P 32
**(Cite as: 1999 WL 1065210 (E.D.Pa.))**



**Motions, Pleadings and Filings**

United States District Court, E.D. Pennsylvania.
Carol SHANNON
v.
CITY OF PHILADELPHIA.
**No. CIV.A. 98-5277.**

Nov. 23, 1999.

*MEMORANDUM AND ORDER*

BECHTLE.

**\*1** Presently before the court is defendant the City of Philadelphia's ("the City") motion for summary judgment and plaintiff Carol Shannon's ("Shannon") response thereto. For the reasons set forth below, the court will deny the motion.

I. *BACKGROUND*

Shannon filed the instant action seeking relief under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 12213, the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S .C. §§ 2601-2654 and the Pennsylvania Human Relations Act ("PHRA"), Pa. Stat. Ann. tit. 43, §§ 951-63. [FN1]

> FN1. The court has jurisdiction over Shannon's ADA and FMLA claims pursuant to 28 U.S.C. § 1331. The court has jurisdiction over Shannon's PHRA claim pursuant to 28 U.S.C. § 1367.

Shannon was hired by the City of Philadelphia in 1987. By 1994, she was working as a data support clerk in the Homicide Unit of the District Attorney's Office. On June 10, 1994, Shannon was admitted to the Crises Center at Fitzgerald Mercy Hospital where she was diagnosed with major depression. Shannon applied to the City for twelve weeks leave from work under the FMLA. The City granted this leave from June 10 to September 1, 1994. (Def.'s Mot. for Summ. J. at 3.) In August 1994, Shannon requested an additional unpaid leave of absence from September 2 to December 6, 1994. (Compl.¶ 15.) The City denied this request and instructed Shannon to return to work on September 2, 1994.

Shannon again requested leave and supported her request with a letter from her physician which stated that Shannon would be able to return to work in three to six months. (Compl.¶¶ 18-19.) The City denied this request as well, and informed Shannon that her employment with the District Attorney's Office was terminated. (Compl.¶¶ 20-21.)

Shannon filed a claim with the Equal Employment Opportunity Commission ("EEOC") and received a Right to Sue letter on July 6, 1998. On October 4, 1998, Shannon filed the instant action alleging claims under the FMLA, the PHRA and the ADA. [FN2] The City filed a motion for summary judgment on the ADA claim on April 26, 1999. Shannon filed a reply on October 12, 1999. [FN3] For the reasons set forth below, the City of Philadelphia's motion for summary judgment on Shannon's ADA claim will be denied.

> FN2. By order dated March 5, 1999, the court dismissed Shannon's FMLA claim because she had not alleged a violation until after the applicable statute of limitations period had expired. *See* 29 U.S.C. § 2617(c)(1)(stating that ordinarily statute of limitations under FMLA is two years). By the same order, Shannon's PHRA claim was dismissed without prejudice because she failed to plead that she had exhausted her administrative remedies under the PHRA before instituting an action in this court. *See* *Woodson v. Scott Paper Co.,* 109 F.3d 913, 925 (3d Cir.1997)(recognizing that plaintiff may not seek judicial remedies under PHRA unless administrative complaint is filed with Pennsylvania Human Relations Commission within 180 days of alleged act of discrimination) (citation omitted). Subsequently, on March 25, 1999, Shannon filed an amended complaint alleging that she had exhausted her administrative remedies under the PHRA.

> FN3. The City filed a motion to supplement its motion for summary judgment on October 8, 1999, and a surreply in further support of its motion for summary judgment on November 16, 1999. For purposes of this memorandum, the City's supplement and surreply to its motion for summary judg-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                          Page 2

Not Reported in F.Supp.2d, 1999 WL 1065210 (E.D.Pa.), 17 NDLR P 32
(Cite as: 1999 WL 1065210 (E.D.Pa.))

ment are incorporated into the City's motion for summary judgment.

II. *LEGAL STANDARD*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute is material only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc., 477 U .S. 242, 248 (1986).* Whether a genuine issue of material fact is presented will be determined by asking if "a reasonable jury could return a verdict for the non-moving party." *Id.* In considering a motion for summary judgment, "[i]nferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir.1992)* (citation omitted).

III. *DISCUSSION*

*2 The ADA prohibits employers from discriminating against "qualified individual[s] with a disability." 42 U.S.C. § 12112(a). The City asserts that it is entitled to judgment as a matter of law on Shannon's ADA claim because Shannon has not established the first two elements of a *prima facie* case. To establish a *prima facie* case under the ADA, a plaintiff must prove that (1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the job she held or sought; and (3) she was terminated or discriminated against because of her disability. *See Deane v. Pocono Medical Center, 142 F.3d 138, 142 (3d Cir.1998)* (citing *Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir.1998)*). The City contends that Shannon is not "disabled" pursuant to the ADA because her alleged disability was of limited duration. The City also argues that Shannon was not a "qualified individual" because she could not attend work and because granting additional leave time would have constituted an undue hardship for the City. The court will address each argument separately.

A. Did Shannon Suffer from a Disability?

The City contends that Shannon was not disabled. (Def.'s Supp. to Mot. for Summ. J. at 3-4.) Under the ADA, the definition of "disability" is divided into three parts. 42 U.S.C. § 12102(2). An individual must satisfy at least one of these parts in order to be considered an individual with a disability. *Id.* The term "disability" is defined as:

   (A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;

   (B) a record of such an impairment; or

   (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2)(A)-(C); 29 C.F.R. § 1630.2(g)(1)-(3). [FN4] Shannon asserts that she is disabled under the first part of the statutory definition. [FN5] (Pl.'s Reply to Def.'s Mot. for Summ. J. at unnumbered p. 4.) Shannon was diagnosed with major depression on June 10, 1994. She alleges that this depression substantially limited her ability to work, and thus constitutes a disability under the ADA.

   FN4. Because the ADA does not define many of the pertinent terms, the court is guided by the Regulations issued by the Equal Employment Opportunity Commission ("EEOC") to implement Title I of the Act. *See 42 U.S.C. § 12116* (requiring EEOC to implement said Regulations); 29 C.F.R. § 1630.2. Regulations such as these are entitled to substantial deference. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984); Blum v. Bacon, 457 U.S. 132, 141 (1982); Helen L. v. DiDario, 46 F.3d 325, 331-32 (3d Cir.1995).*

   FN5. Shannon also alleges that her disability satisfies both the second and third parts of the statutory definition. (Pl.'s Reply to Def.'s Mot. for Summ. J. at unnumbered p. 4.)

The ADA defines disability to include "mental impairment[s]." 42 U.S.C. § 12102(2)(A)(defining disability as "physical or mental impairment"). Under the Regulations implementing Title I of the ADA, impairments encompass "any mental or psychological disorder, such as ... emotional or mental illness." 29 C.F.R. § 1630.2(h)(2). Therefore, de-

Not Reported in F.Supp.2d                                                            Page 3
Not Reported in F.Supp.2d, 1999 WL 1065210 (E.D.Pa.), 17 NDLR P 32
(Cite as: 1999 WL 1065210 (E.D.Pa.))

pression and other mental illnesses may qualify as impairments for purposes of the ADA. *See, e.g., Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1132 (11th Cir.1996), *amended on reh'g,* 102 F.3d 1118 (11th Cir.1996)(stating that depression has been held to constitute mental impairment); *Duda v. Board of Educ.,* 133 F.3d 1054, 1059 (7th Cir.1998)(recognizing manic depression as disability under ADA); *Den Hartog v. Wasatch Academy,* 129 F.3d 1076, 1081 (10th Cir.1997)(recognizing bipolar disorder as mental disability covered under ADA); *Doe v. Region 13 Mental Health--Mental Retardation Comm'n,* 704 F.2d 1402, 1408 (5th Cir.1983)(recognizing depression as handicap under section 504 of Rehabilitation Act of 1973) [FN6]; *Olson v. General Elec. Astrospace,* 966 F.Supp. 312, 316 (D.N.J.1997)(recognizing depression as disability under ADA); *Stradley v. Lafourche Communications, Inc.,* 869 F.Supp. 442, 443 (E.D.La.1994)(same).

> FN6. *Doe* involved the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., but Congress intended for courts to rely on Rehabilitation Act cases when interpreting similar language in the ADA. 29 C.F.R. § 1630.2(g) & (m) app.

**\*3** Determining whether an impairment exists is only the first step in determining whether an individual is disabled. To meet the level of a disability, the impairment must "substantially limit[ ]" one of the individual's major life activities. 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(g)(1). "Major life activities" are defined to include "those basic activities that the average person in the general population can perform with little or no difficulty." 29 C .F.R. § 1630.2(i) app. They include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Shannon asserts that her depression substantially limited her ability to work. (Pl.'s Reply to Def.'s Mot. for Summ. J. at unnumbered p. 3.)

The ability to work is clearly a major life activity. Nonetheless, for Shannon's impairment to rise to the level of a disability, her ability to work must be substantially limited by her condition. [FN7] *See Sarko v. Penn-Del Directory Co.,* 968 F.Supp. 1026 (E.D.Pa.1997)(stating that depression did not constitute substantial impairment where depression and

medication individual took to treat it interfered only with her ability to get to work on time).

> FN7. With regard to "working," the inability to perform a single, particular job does not constitute a substantial limitation. 29 C.F . R. § 1630.2(j)(3)(i); *Gordon v. E.L. Hamm & Assoc., Inc.,* 100 F .3d 907, 912 (11th Cir.1996); *Imler v. Hollidaysburg Am. Legion Ambulance Serv.,* 731 A.2d 169 (Pa.Super.Ct.1999). Rather, the term "substantially limits" means that the plaintiff is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. 29 C.F.R. § 1630.2(j)(3)(i). In this case, the City initially asserted that "the evidence ... indicates that [Shannon] was ... unable to perform any work at all." (Def.'s Mot. for Summ. J. at 7 & Ex. 4.) In its supplement to its motion for summary judgment, however, the City argues that despite the fact that Shannon was unable to work as a data services support clerk, she failed to establish that she could not perform "a broader class of potential jobs for a person with her skills and training." (Def.'s Supp. to Mot. for Summ. J. at 10.) The City also contends that because Shannon began looking for work in October 1994, approximately one month after her request for extended medical leave was denied, she cannot establish that she was substantially limited in her ability to work. *Id.* at 11. It is not disputed that Shannon's ability to work was limited "from June 1994 until October 1994." *Id.* at 8. Further, Shannon's physician certified that she was "not able to perform work of any kind." (Def.'s Mot. for Summ. J. at 3.) Viewing the evidence in the light most favorable to Shannon, the court finds that a reasonable jury could conclude that Shannon was substantially limited in her ability to work.

The term "substantially limits" is not defined by statute. However, under the regulations implementing the ADA, an impairment is considered substantially limiting when the individual is "unable to perform a major life activity that the

Not Reported in F.Supp.2d                                                                 Page 4
Not Reported in F.Supp.2d, 1999 WL 1065210 (E.D.Pa.), 17 NDLR P 32
(Cite as: 1999 WL 1065210 (E.D.Pa.))

average person in the general population can perform" or when the impairment "significantly restricts the duration, manner or condition under which an individual can perform a particular major life activity as compared to the average person in the general population's ability to perform that same major life activity." 29 C.F.R. § 1630.2(j)(2) app.; *Aldrich v. Boeing Co.,* 146 F.3d 1265, 1269 (10th Cir.1998)(quoting 29 C.F.R. § 1630.2(j)(1)). The EEOC guidelines identify several factors to assist in the determination of whether a particular impairment is of such severity that it comes within the protection intended by the ADA. Factors the court may consider in determining whether an individual is substantially limited in a major life activity include (i) the nature and severity of the impairment; (ii) the expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2) (listing factors); *Criado v. IBM,* 145 F.3d 437, 442 (1st Cir.1998)(same); *Aldrich,* 146 F.3d at 1269-70 (same). [FN8]

> FN8. In addition to the factors listed in 29 C.F.R. § 1630.2(j)(2), the following factors may also be considered in determining whether an individual is substantially limited in the major life activity of "working":
> (A) [t]he geographical area to which the individual has reasonable access; (B) [t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (C) [t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).
> 29 C.F.R. § 1630.2(j)(3)(ii).

The City views Shannon's depression as a temporary mental

condition that cannot qualify as a disability under the ADA because it was not long-standing or permanent. (Def.'s Supp. to Mot. for Summ. J. at 3-4.) If Shannon's impairment were a temporary injury with minimal residual effects, it would not be the basis for a sustainable claim under the ADA. *See McDonald v. Commonwealth of Pennsylvania, Dep't of Pub. Welfare, Polk Ctr.,* 62 F.3d 92, 95 (3d Cir.1995)(finding no disability for purposes of ADA where plaintiff was not able to work for less than two months following surgery); *Sanders v. Arneson Prods., Inc.,* 91 F.3d 1351, 1354 (9th Cir.1996) (finding that temporary psychological impairment of less than four months was not disability under ADA); *Blanton v. Winston Printing Co.,* 868 F.Supp. 804, 807 (M.D.N.C.1994)(stating that knee injury which prevented plaintiff from working for matter of days was not disability under ADA); *Imler,* 731 A.2d at 174 (stating that plaintiffs do not suffer disability under ADA when injury is of temporary nature). Thus, it is clear that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact are *usually* not disabilities" under the ADA. *Aldrich,* 146 F.3d at 1270 (citing 29 C.F.R. § 1630.2(j) app.) (alteration in original). By way of illustration, the EEOC's interpretive guidance in the appendix to the regulation points out that a broken leg that takes eight weeks to heal is an impairment of fairly brief duration. 29 C.F.R. § 1630.2(j) app. Similarly, broken limbs, sprained joints, concussions, appendicitis and influenza are not usually disabilities. *Id.*

*4 Nonetheless, "[a]n impairment does not necessarily have to be permanent to rise to the level of a disability. Some conditions may be long-term, or potentially long-term, in that their duration is indefinite and unknowable or is expected to be at least several months. Such conditions, if severe, may constitute disabilities." *Aldrich,* 146 F.3d at 1270 (citing EEOC, *Interpretive Manual* (1995), *reprinted in* 2 *EEOC Compliance Manual* § 902.4(d), at 902-30 (BNA 1997)). In *Aldrich,* the Tenth Circuit determined that a jury could find that the plaintiff suffered a substantially limiting impairment where the duration of his condition was "indefinite, unknowable, or was expected to be at least several months." *Aldrich,* 146 F.3d at 1270.

The court finds that Shannon has presented evidence that a

Not Reported in F.Supp.2d                                                                                            Page 5

Not Reported in F.Supp.2d, 1999 WL 1065210 (E.D.Pa.), 17 NDLR P 32

**(Cite as: 1999 WL 1065210 (E.D.Pa.))**

genuine issue of material fact exists as to whether her impairment rose to the level of a disability under the ADA. The record shows that although Shannon was not diagnosed with depression until June 1994, she began suffering from it in January 1994. (Def.'s Supp. to Mot. for Summ. J. Ex. 3.) The major depressive episode Shannon experienced in June 1994 left her hospitalized for twelve days. (Pl .'s Reply to Def.'s Request for Production of Docs. at unnumbered p. 17.) This episode required an extended leave of absence during which Shannon was unable to work. (Def.'s Mot. for Summ. J. at 7 & Ex. 3.) Examining the evidence under the standard required, the court finds that a reasonable jury could return a verdict for Shannon. The record contains sufficient evidence to present a genuine issue of fact as to whether Shannon was "disabled" under the ADA. Accordingly, the court will deny the City's motion for summary judgment on this ground.

B. Was Shannon a "Qualified Individual"?

The City's second argument is that Shannon was not a "qualified individual" as defined by the ADA. The City asserts that Shannon was not qualified because she was not able to attend work for an extended period of time. Further, the City contends that granting Shannon extended leave would have constituted an undue hardship rather than a reasonable accommodation.

Under the ADA, "a qualified individual with a disability" is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Thus, to be a "qualified individual" under the ADA, Shannon must have been able to perform the essential functions of her job with the City, with or without a reasonable accommodation. The determination of whether an individual with a disability is "qualified" is made in two steps. 29 C.F.R. § 1630.2(m) app. First, a determination is made as to whether the individual satisfies the prerequisites for the position. Id. Second, a determination is made as to whether or not the individual can perform the essential functions of the position, with or without a reasonable accommodation. Id.

**\*5** In this case, Shannon began working for the City in 1987

as a clerk typist. By the time Shannon suffered her impairment, she had been promoted to and was performing as a data support services clerk. (Def.'s Supp. to Mot. for Summ. J. at 8 n. 5 & Ex. 9; Pl.'s Ans. to Def.'s Interrogatories at ¶ 4.) The City does not claim that Shannon was not qualified for her promotion or that she did not satisfy the prerequisites for that position. Rather, the City asserts that because Shannon's physician indicated that she would not be able to return to work for three to six months beyond the leave period granted under the FMLA, Shannon was not qualified to perform the essential function of attending work. (Def.'s Mot. for Summ. J. at 7-8.)

1. Essential Functions

Under the ADA, "essential functions" are defined to include the "fundamental job duties" of a particular position. 29 C.F.R. § 1630.2(n)(1). Evidence of whether a certain function is "essential" includes, among other things: the employer's judgment as to what functions of a job are essential; the amount of time spent on the job performing the particular function; the consequences of not requiring the job holder to perform the function; and the number of other employees available among whom the performance of a particular function may be distributed. 42 U.S .C. § 12111(8)(listing factors); 29 C.F.R. § 1630.2(n)(3) (same); Imler, 731 A.2d at 173 (same); see also Strathie v. Department of Transp., 716 F.2d 227, 231 (3d Cir.1983) (interpreting analogous Rehabilitation Act). Whether or not a particular function is essential is a factual determination made on a "case by case" basis. 29 C.F.R. 1630.2(n) app.

For most jobs, regular attendance at work is an essential function. See, e.g., Carr v. Reno, 23 F.3d 525, 529 30 (D.C.Cir .1994)(construing Rehabilitation Act); Jackson v. Veterans Admin., 22 F.3d 277, 278-79 (11th Cir.1994)(same). However, where a leave from work is at issue, whether attendance is an essential function of a particular job is "not the relevant inquiry." Rascon v. U.S. West Communications, Inc., 143 F.3d 1324, 1333 (10th Cir.1998). In Rascon, the Tenth Circuit stated that when leave was at issue, "the question of whether attendance is an essential function is equivalent to the question of what kind of leave policy the company has." Id. The record in this case shows that the applicable Civil Service Regulations stipulate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 6
Not Reported in F.Supp.2d, 1999 WL 1065210 (E.D.Pa.), 17 NDLR P 32
**(Cite as: 1999 WL 1065210 (E.D.Pa.))**

that extended medical leave is not to exceed one year, but that extra time may be granted for "meritorious" reasons. (Shannon Dep. at 9; Pl.'s Reply to Def.'s Mot. to Dismiss Ex. B at 2.) Further, Shannon asserts that the City granted extended leave following FMLA leave to two other employees during the same period in which her request was denied. (Pl.'s Reply to Def.'s Mot. for Summ. J. at unnumbered p. 6.)

Additionally, a number of courts have recognized that leave of absence for medical treatment may constitute a reasonable accommodation under the ADA. *See Criado v. IBM Corp.,* 145 F.3d 437 (stating that leave may constitute reasonable accommodation); *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.,* 155 F.3d 775, 782 (6th Cir.1998)(citing *Criado* ); *Rascon v. U.S. West Communications, Inc.,* 143 F.3d 1324, 1334 (10th Cir.1998) (stating that "time for medical care or treatment may constitute a reasonable accommodation"); *Dockery v. North Shore Med. Ctr.,* 909 F.Supp. 1550, 1560 (S.D.Fla.1995)(recognizing that unpaid leave may constitute reasonable accommodation); *Schmidt v. Safeway, Inc .,* 864 F.Supp. 991, 996 (D.Or.1994)(reasonable accommodation may include leave of absence for treatment). The EEOC interpretive guidance to the ADA states that a reasonable accommodation could include "additional unpaid leave for necessary medical treatment." 29 C.F.R. § 1630.2(o) app. Likewise, Department of Labor regulations announce that a reasonable accommodation may require an employer "to grant liberal time off or leave without pay when paid sick leave is exhausted and when the disability is of a nature that it is likely to respond to treatment of hospitalization." 29 C.F.R. pt. 32, app. A(b). [FN9] A leave for an "indefinite" period of time, however, is not a reasonable accommodation, particularly where the employee presents no evidence of the expected duration of the impairment and no indication of a favorable prognosis. *See, e.g., Myers v. Hose,* 50 F.3d 278, 283 (4th Cir.1995)(stating that reasonable accommodation does not require employer to wait indefinite period); *Rogers v. International Marine Terminals, Inc .,* 87 F.3d 755, 759-60 (5th Cir.1996)(same); *Hudson v. MCI Telecommunications Corp.,* 87 F.3d 1167, 1169 (10th Cir.1996)(stating that indefinite leave with no indication of favorable prognosis was not reasonable accommodation); *Monette v. Electronic Data*

*Sys. Corp.,* 90 F.3d 1173, 1188 (6th Cir.1996)(observing that employer had no way of knowing when, or even if, employee would return to work).

> FN9. The term "reasonable accommodation" is open-ended: the statues and regulations offer examples, but caution that the term is not limited to those examples. 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o); 29 C.F.R. § 1630.2(o) app. For example, the ADA lists a number of other "reasonable accommodations" that may enable the individual with a disability to perform the essential functions of his or her job, including:
> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.
> 42 U.S.C. § 12111(9).

**\*6** Whether a leave request is reasonable turns on the facts of the case. *Criado,* 145 F.3d at 443 (recognizing that "[a] leave of absence and leave extensions are reasonable accommodations in some circumstances"). Courts have held that a leave of five months for medical treatment was a reasonable accommodation. *Rascon,* 143 F .3d at 1334-35 (stating that five month leave of absence to attend treatment program was reasonable accommodation). Further, reasonable accommodation is a "continuing" duty and is not exhausted by one effort. *See Ralph v. Lucent Tech., Inc.,* 135 F .3d 166, 172 (1st Cir.1998)(finding that employer may be required to grant additional accommodations beyond 52-week leave with pay for employee who suffered mental breakdown). In this case, Shannon requested an additional three months of unpaid leave for medical treatment following twelve weeks of FMLA leave. Shannon's physician was "hopeful" that Shannon's symptoms would "resolve nearly entirely" within a year and he opined that she would be

Not Reported in F.Supp.2d                                                                                    Page 7
Not Reported in F.Supp.2d, 1999 WL 1065210 (E.D.Pa.), 17 NDLR P 32
**(Cite as: 1999 WL 1065210 (E.D.Pa.))**

"fully fit" to return to work in three to six months. (Compl. ¶ 19; Def.'s Mot. for Summ. J. Ex. 6.) Viewing the evidence in the light most favorable to Shannon, the court finds that a reasonable jury could conclude that Shannon's request for an additional three months of unpaid leave for medical treatment was a reasonable accommodation. Thus, the court will deny the City's motion for summary judgment on this ground.

2. Undue Hardship

The City asserts that granting Shannon an additional three months of unpaid leave beyond the twelve weeks leave it granted Shannon pursuant to the FMLA would have constituted an undue hardship rather than a reasonable accommodation for Shannon's disability. [FN10] An employer is not required to provide an accommodation that is unreasonable or would impose an "undue hardship." 42 U.S.C. § 12112(b)(5)(A). "Undue hardship" means an action that requires "significant difficulty or expense" when considered in light of the following factors:

> FN10. As to the issue of whether a particular accommodation is reasonable or an undue hardship, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits. *Walton v. Mental Health Ass'n,* 168 F.3d 661, 670 (3d Cir.1999). Following such a showing by the plaintiff, the burden shifts to the defendant to prove that the accommodation is unreasonable or that it creates an undue hardship. *Id.*

(i) the nature and cost of the accommodation needed ...;
(ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
(iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
(iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the work force of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.
42 U.S.C. § 12111(10).

Shannon asserts that granting additional unpaid leave time would have been a reasonable accommodation. In support of this assertion, Shannon points out that her duties as a data support clerk were assumed by another City employee who was transferred from another unit. (Pl.'s Reply to Def.'s Mot. for Summ. J. at unnumbered p. 4.) Shannon further contends that the City granted extended leave to two other individuals during the same year that she was denied extended leave. (Pl.'s Reply to Def.'s Mot. for Summ. J. at unnumbered p. 4.) The City responds that an employer is not obligated to provide identical accommodations for all employees. *See Myers v. Hose,* 50 F.3d 278 (4th Cir.1995) (stating that "the fact that certain accommodations may have been offered ... to some employees ... does not mean that they must be extended to [other employees] as a matter of law"). The City acknowledges that Shannon's position was assumed by another City employee during her initial leave of absence, however, the City alleges that granting Shannon an additional three months leave would have imposed an undue hardship because of the difficulties in hiring a temporary worker. (Def.'s Mot. for Summ. J. at 16.) The court finds that a genuine issue of fact exists as to whether an extended leave of absence would have been reasonable for the City under the circumstances. Thus, the court will deny the City's motion for summary judgment on this ground.

*7 In short, there remain several material issues of fact for trial, including whether Shannon was disabled under the ADA, whether Shannon was qualified to perform her job with an accommodation, and if so, whether the leave time she requested was a reasonable accommodation or an undue hardship for the City. Accordingly, the court will deny the City's motion for summary judgment on Shannon's ADA claim.

IV. *CONCLUSION*

For the reasons set forth above, the City's motion for summary judgment will be denied.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 8
Not Reported in F.Supp.2d, 1999 WL 1065210 (E.D.Pa.), 17 NDLR P 32
**(Cite as: 1999 WL 1065210 (E.D.Pa.))**

An appropriate Order follows.

### ORDER

AND NOW, TO WIT, this --- day of November, 1999, upon consideration of defendant the City of Philadelphia's motion for leave to supplement and motion to surreply to the City of Philadelphia's motion for summary judgment, it is hereby ORDERED that said motions are GRANTED. The City's supplement and surreply to its motion for summary judgment are hereby incorporated into the City of Philadelphia's motion for summary judgment.

IT IS FURTHER ORDERED that upon consideration of defendant the City of Philadelphia's motion for summary judgment and plaintiff Carol Shannon's response thereto, IT IS ORDERED that said motion is DENIED.

Not Reported in F.Supp.2d, 1999 WL 1065210 (E.D.Pa.), 17 NDLR P 32

**Motions, Pleadings and Filings (Back to top)**

• 2:98cv05277 (Docket) (Oct. 04, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.